IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JEANNIE MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:08CV202-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Jeannie Martin brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed and this action remanded to the Commissioner for further administrative proceedings.

**BACKGROUND**

On January 20, 2005, plaintiff filed an application for supplemental security income. On November 15, 2006, after the claim was denied at the initial administrative level, an ALJ conducted an administrative hearing. The ALJ rendered a decision on February 16, 2007. The ALJ concluded that plaintiff suffered from the severe impairments of "depression and anxiety." (R. 20). He found that plaintiff's impairments, considered in combination, did not

meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform her past relevant work as a waitress. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On January 25, 2008, the Appeals Council denied plaintiff's request for review.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

**DISCUSSION**

The plaintiff challenges the Commissioner's decision, arguing that the decision is due

to be reversed because the ALJ failed to evaluate plaintiff's mental impairments properly.[1] Specifically, he argues that: (1) the ALJ's conclusion that plaintiff suffers from the severe impairments of depression and anxiety is inconsistent with his rating of her level of impairment on the Psychiatric Review Technique Form; (2) the ALJ erred by failing to provide any reason for his implicit rejection of the opinions of Dr. Hunter[2], the non-examining DDS psychologist, regarding plaintiff's mental limitations; (3) the ALJ erred by failing to note the opinion of Dr. Crawford (the physician who performed the consultative physical examination) that plaintiff's mental status is such that she lacks the "ability to care for herself" and by failing explain his reasons for rejecting Dr. Crawford's opinion;[3] and (4) the ALJ erred by failing to articulate a sufficient legal basis for rejecting the opinion of Dr. Lopez, plaintiff's treating psychiatrist, regarding plaintiff's mental limitations and by failing to contact Dr. Lopez for clarification.

The Commissioner responds that: (1) "[a]lthough the ALJ did not explicitly state the weight he afforded to Dr. Hunter's opinion, it is clear from his decision that he afforded it lesser weight because it was inconsistent with the treatment notes of Plaintiff's treating psychiatrist[,]" and that this deficiency in opinion-writing is not a sufficient reason for setting

---

[1] Although plaintiff has also received treatment for various physical ailments, plaintiff does not point to any error in the ALJ's evaluation of her physical condition. Accordingly, the court does not discuss plaintiff's physical condition or the medical treatment for any physical impairment.

[2] The parties refer to the non-examining DDS psychologist as Dr. Hunter. The court will do likewise, although his signature appears to read "Hinton." (See R. 203).

[3] Dr. Crawford's "impressions" following the April 19, 2005 examination were: (1) psychoneurosis; (2) history of herniated cervical and lumbar disks; (3) history of hepatitis, not confirmed; and (4) depressive reaction. (R. 169-73).

3

aside the decision (Doc. # 18, pp. 5-6); (2) while "[a]dmittedly, the ALJ did not specifically state that he afforded little weight to Dr. Lopez' opinion[,] . . . that finding is abundantly clear from the ALJ's discussion of his opinion" and the ALJ articulated "good cause" for affording the opinion "lesser weight" (id. at pp. 7-8); (3) the ALJ was not required to recontact Dr. Lopez because the evidence of record was adequate to determine whether plaintiff was disabled; and (4) that, "even though the ALJ failed to mention [the mental status] aspect of Dr. Crawford's report," Dr. Crawford's opinion would not be entitled to as much weight as that of Dr. McKeown, a mental health specialist who performed a consultative mental status examination,[4] and Dr. Crawford's report did not indicate what caused him to form his opinion about plaintiff's ability to care for herself (id. at pp. 9-10).

The Eleventh Circuit has recently reiterated the general rule that:

> "[t]he ALJ must state specifically the weight accorded each item of evidence and the reasons for his decision." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir.1986). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.1981). We have made it abundantly clear that "[u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Id. (quotation marks and citation omitted).

Luckey v. Astrue, 331 Fed. Appx. 634, 639, 2009 WL 1362988, 4 (11th Cir. May 18, 2009).

Upon consideration of the record and the arguments of the parties, the court concludes that the ALJ erred in his evaluation of plaintiff's mental impairments. First, because the ALJ

---

[4] Dr. McKeown states that plaintiff "is able to do basic cooking, cleaning, and shopping but has to limit herself due to pain in her neck and back" and that she "is able to meet activities of daily living and maintaining personal hygiene[.]" (R. 167).

did not even mention Dr. Crawford's opinion regarding plaintiff's mental status – that plaintiff suffers from psychoneurosis and depressive reaction and lacks adequate ability to care for herself (see R. 21) – the court is unable to conclude that the ALJ considered this opinion. Whether or not he could have articulated an adequate reason for rejecting Dr. Crawford's opinion (if he considered it) is beside the point. The court is unable to review an analysis that the ALJ did not explicitly conduct. See McCloud v. Barnhart, 166 Fed.Appx. 410, 418-19 (11th Cir. 2006)("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why. Here, the ALJ neither explained the weight that he gave to Newman's report nor why he discredited Newman's findings regarding McCloud's ability to engage in prolonged work. On remand, the ALJ must make these determinations.")(citations omitted).

With regard to the ALJ's treatment of the opinion of the non-examining DDS psychologist, the Commissioner argues:

> The ALJ acknowledged Dr. Hunter's opinion in his decision (Tr. 22). But the ALJ also noted that Dr. Hunter rendered his opinion without the benefit of the treatment notes of Fernando Lopez, M.D., which as the ALJ discussed, showed that repeated mental status examination did not reveal any significant mental symptoms (Tr. 22, 254-59). Plaintiff's mood was repeatedly described as euthymic (Tr. 255-57). In March 2005, Dr. Lopez described Plaintiff was neat, verbal, presentable, and not depressed (Tr. 258). She was "well maintained" and had no medication side-effects (Tr. 258). Although the ALJ did not explicitly state the weight he afforded to Dr. Hunter's opinion, it is clear from his decision that he afforded it lesser weight because it was inconsistent with the treatment notes of Plaintiff's treating psychiatrist (Tr. 22).

(Doc. # 18, p. 5). The ALJ's discussion of the evidence, however, is much less detailed than

the argument the Commissioner now presents to the court. With regard to Dr. Hunter's assessment, the ALJ states only that:

> The state agency completed a Psychiatric Review Technique form and an assessment of the claimant's mental capacities. Those documents, *which were completed before the treatment records of Dr. Lopez were of record*, indicated that the claimant had a depressive disorder and that anxiety had been considered. The claimant was found to have moderate limitations, because of her mental or emotional status, that would limit her to understanding, remembering, and carrying out short and simple instructions for periods of two hours at a time. Interactions with the public and changes in the workplace should be infrequent. (Exhibits 11F and 12F).

(R. 22)(emphasis added). The ALJ also noted, in discussing Dr. Lopez' treatment notes, that those notes "included mental status assessments that indicated no significant mental symptoms" (R. 22) and that they "show that the claimant is seen on a sporadic basis and the specific mental status evaluations documented in his notes show that no significant change has occurred in the claimant's condition since 2002" (R. 23). However, in reaching his opinion regarding plaintiff's mental status, the state agency psychologist considered Dr. Crawford's diagnosis of psychoneurosis (which the ALJ did not mention), and a Florida psychiatrist's September 2002 diagnosis of panic disorder with agoraphobia (which the ALJ also did not specifically mention)[5]. (See R. 191, 198). If – as the ALJ states – Dr. Lopez' treatment notes show that plaintiff's condition has remained substantially unchanged since 2002, it is not entirely clear how the ALJ determined that Dr. Lopez' treatment notes provide a basis for rejecting the DDS psychologist's opinion in 2005 – which took into consideration

---

[5] In summarizing the record of plaintiff's mental health treatment in Florida, the ALJ stated, "Numerous diagnoses were noted, including panic attacks and depression, with the reports indicating mental status findings of moderate anxiety in September, 2002, with all other categories indicating no limitations or only mild limitations." (R. 22).

her mental status in 2002 – that plaintiff's "[i]nteraction with the general public should be infrequent." (R. 203). The court does not here conclude that the ALJ could not have stated a legally adequate basis for rejecting Dr. Horton's opinion, but only that he did not do so in the decision before the court. See Vuxta v. Commissioner of Social Sec., 194 Fed.Appx. 874, 876 (11th Cir. 2006)("Under 20 C.F.R. § 404.1527(f)(2), the ALJ must consider non-examining state psychologists' opinions and, when the ALJ does not give controlling weight to a treating physician, must explain the weight given to their opinions. Failure to explain the weight given to different medical opinions is reversible error.")(citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also 20 C.F.R. § 416.927(f)(2)(ii)("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

Finally, as noted above, the ALJ's discussion of Dr. Lopez' treatment notes and assessment of plaintiff's functional limitations is cursory. He states:

> Reports from Fernando Lopez, M.D., a psychiatrist, document treatment of the claimant from March 11, 2005, through October 6, 2006. Those notes show that the claimant was seen on four occasions in 2005 and on three occasions in 2006. Although Dr. Lopez completed a questionnaire on October 6, 2006, on which he indicated the claimant had marked and extreme limitations because of anxiety, his specific office notes included mental status assessments that indicated no significant mental symptoms.

\* \* \* \* \*

7

> [T]he specific treatment notes from Dr. Lopez show that the claimant is seen on a sporadic basis and the specific mental status evaluations documented in his notes show that no significant change has occurred in the claimant's condition since 2002.

(R. 22-23). The Commissioner contends that the ALJ's treatment of Dr. Lopez' opinion is sufficient, arguing:

> In his decision, the ALJ discussed the form completed by Dr. Lopez, but then noted that it was inconsistent with Dr. Lopez' own treatment notes (Tr. 22). As discussed above, there was nothing in Dr. Lopez' treatment notes to suggest that Plaintiff had any extreme, marked, or even moderate functional restrictions as a result of her mental impairments (Tr. 22). On the contrary, in a progress note dated March 11, 2005, Dr. Lopez indicated that Plaintiff was not depressed and doing well on medication with no side-effects (Tr. 258). Because Dr. Lopez' opinion was inconsistent and unsupported by his own treatment notes, the ALJ had "good cause" to afford his opinion lesser weight.

(Doc. # 18, p. 7 )(citations omitted).

Again, counsel's argument before this court is considerably more detailed than the ALJ's analysis. The court's review of the ALJ's own analysis is hampered by the ALJ's failure to point to the specific portions of Dr. Lopez' treatment notes that he found to be inconsistent with Dr. Lopez' opinion of plaintiff's functional capacities. The Commissioner now proposes Dr. Lopez' note on March 11, 2005, shortly after plaintiff first presented to him for treatment as the source of the inconsistency. However, neither the Commissioner nor the ALJ refer to Dr. Lopez' note for October 6, 2006, the last date of treatment in the record. On that date, Dr. Lopez described plaintiff as "dysphoric" and "withdrawn," and – if the court is deciphering his notes correctly[6] – indicates that she was suffering from PTSD after her father's husband committed suicide and plaintiff saw the blood splashed on the wall. (R.

---

[6] As plaintiff argues, Dr. Lopez' handwritten office notes are largely illegible.

252). On that date, Dr. Lopez listed Axis I diagnoses of "anxiety" and "296." In the DSM-IV-TR, the code "296.00" refers to "Bipolar I Disorder, Single Manic Episode, Unspecified."[7] See DSM-IV-TR, Appendix F. On the same day, Dr. Lopez completed the questionnaire showing marked and extreme limitations of function. (R. 249-51). Under these circumstances, the court concludes that the ALJ's general statements regarding Dr. Lopez' treatment records fall short of the clear articulation required by law and are insufficient to permit the court to review the ALJ's reasons for rejecting Dr. Lopez' opinion.[8] See Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004)("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate his reasons.").

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be REVERSED and this action REMANDED for further administrative proceedings consistent with this Memorandum Opinion.

Done, this 26th day of February, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[7] Dr. McKeown, the consultative psychological examiner stated, "Diagnostically, she demonstrates: 1 - Depressive Disorder NOS. 2 - Rule Out Bipolar Disorder." (R. 167).

[8] Again, the court does not conclude that the ALJ could not have rejected Dr. Lopez' opinion, but only that he has not articulated his reasons with sufficient specificity to permit review.